IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTERN PA CHILD CARE, LLC, et al.,** | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 14-968 ) ) |
| v. | ) ) |
| **ROBERT J. POWELL, et al.,** | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

**CONTI, Chief District Judge**

      At a hearing held on October 14, 2014, the court *sua sponte* notified the parties in this action that it was considering transferring this action, pursuant to 28 U.S.C. § 1404(a), from the United States District Court for the Western District of Pennsylvania ("Western District") to the United States District Court for the Middle District of Pennsylvania ("Middle District"). The civil actions filed in the Middle District, and consolidated at civil action number 09-CV-286, and in this court involve many of the same parties, many of the same issues, and are premised on similar factual averments. The plaintiffs in both actions are seeking to obtain monetary recovery from the defendants and assert many of the same claims and arguments. The court requested that the parties submit briefs concerning the transfer of this case pursuant to 28 U.S.C. § 1404(a). On October 21, 2014, Western PA Child Care, LLC, PA Child Care, LLC, Mid-Atlantic Youth Services Corp., Consulting Innovations and Services, Inc., Gladstone Partners, LP, and Gregory R. Zappala ("plaintiffs") filed their brief in support of a transfer of this case to the Middle District. (ECF No. 156.) On October 21, 2014, Jill Moran and the Powell Law Group, P.C.,

1

("Moran defendants") and Robert J. Powell, Debra Powell, and Vision Holdings, LLC ("Powell defendants" and together with the Moran defendants "defendants") filed their briefs in opposition. (ECF Nos. 157, 158, respectively.)  At a status conference held on October 24, 2014, the court granted the parties the right to file supplemental briefs and on October 28, 2014, plaintiffs filed their supplemental brief in support of the transfer, (ECF No. 166), and defendants filed a collective supplemental brief in opposition to the transfer. (ECF No. 165.)  Having been fully briefed, the issue is ripe for disposition.

I. FACTUAL BACKGROUND

   A. Factual Background

      1. Western District Action

         On July 18, 2014, plaintiffs filed a nineteen-count complaint in the Western District against defendants alleging that defendants engaged in illegal activity to steal millions of dollars through a vast criminal enterprise. (ECF No. 1.)  Plaintiffs alleged that defendants falsified the cost of constructing juvenile detention facilities to obtain millions of dollars in additional loans and pocketed the difference. (Id.)  Plaintiffs also allege that Robert Powell bribed Luzerne County, Pennsylvania, Court of Common Pleas officials for favorable rulings when defendants had an interest at stake. (Id.)  Based on these two major theories, plaintiffs asserted fifteen counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and four counts of state law claims for unjust enrichment. (Id.)

2. Middle District Action

The civil action in the Middle District, under the caption Wallace v. Powell, is a consolidation of cases, the first of which was filed on February 13, 2009.[1] Wallace v. Powell, 3:09-CV-286, 2014 WL 3109201, at *1 (M.D. Pa. July 7, 2014). The claims in the consolidated cases arise out of the same alleged conspiracy. (Id.)

> Plaintiffs in this action, juveniles or the parents of juveniles who appeared before [a Luzerne County, Pennsylvania, Court of Common Please Judge] [and were sentenced to either PA Child Care or Western PA Child Care], seek redress from the former judges, as well as the individuals and business entities involved in the construction and operation of these facilities, for the alleged unlawful conspiracy and resulting deprivations of Juvenile Plaintiffs' rights." (Id.) The individual and class complaints assert, in part, the following causes of action against Provider Defendants: (1) 42 U.S.C. § 1983 claims alleging a conspiracy to violate Plaintiffs' constitutional rights; (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.;* (3) conspiracy to violate RICO; (4) state-law civil conspiracy; and (5) state-law false imprisonment.

(Id.)

---

[1] Plaintiffs in the Western District and Middle District cases are different; however, many of the defendants in the Middle District case are either plaintiffs or defendants in the instant action. Plaintiffs in the instant case that are defendants in the Middle District are Western PA Child Care, LLC, PA Child Care, LLC, Mid-Atlantic Youth Services, Corp., and Gregory Zappala. Defendants in the instant case that are defendants in the Middle District are Robert J. Powell, Powell Law Group, P.C., and Vision Holdings, LLC. The only other parties in the Western District action not currently in the Middle District action are Jill Moran, Consulting Innovations and Services, Inc., Gladstone Partners, LP; however, the interests of these parties are currently at stake in the Middle District action. Jill Moran is an alleged partner, director, officer, and shareholder of Powell Law Group, P.C. (ECF No. 1 at 2.) Consulting Innovations and Services, Inc. was owned by Gregory Zappala and was a party that organized and executed PA Child Care, LLC's operating agreement. (Id. at 5.) Gladstone Partners, LP was co-owned and controlled by Robert Powell and Gregory Zappala. (Id. at 24.)

II. LEGAL STANDARD

   A. The Court's *Sua Sponte* Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

      28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

"The procedure for obtaining transfer of a civil action under 28 U.S.C. § 1404(a) is by motion. The language of the statute is broad enough that a district court can order transfer on its own initiative." 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure § 3884 (4th ed. 2013) [hereinafter Wright & Miller]; see Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 972 (8th Cir. 2012); Nalls v. Coleman Low Fed. Inst., 440 F. App'x 704, 706 (11th Cir. 2011); Shisinday v. Texas Dep't of Criminal Justice-Agency, 124 F. App'x 898, 899 (5th Cir. 2005); In re Cox, 00-7194, 2000 WL 1683506 (D.C. Cir. Oct. 19, 2000).

> The Third Circuit has not decided whether a district court may transfer venue under 28 U.S.C. § 1404(a) on its own motion. District Courts within this Circuit have held that when no motion to transfer to a more convenient venue has been filed, the Court may *sua sponte* transfer the case, but only after first providing the parties with an opportunity to brief the transfer issue.

Day v. 21st Century Centennial Ins. Co., Civ. No. 12-1096-LPS, 2014 WL 3909533, at *1 (D. Del. Aug. 11, 2014) (citing Johnson v. U.S. Bancorp, Civ. No. 10-1072-LPS, 2012 WL 1133689, at *4 (D. Del. Mar. 30, 2012) *compare* with Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267, 273-74 (3d Cir. 1962) (vacating the district court's transfer order because "no notice, hearing or opportunity to be heard as to transfer under Section 1404(a) was afforded").

4

To fulfill the notice requirement parties should be advised that the court may transfer the case and be allowed an "opportunity to file objections" to the proposed transfer. Jackson v. Murphy, Civ. No. 08-585, 2008 WL 2566530, at *1 n.2 (W.D. Pa. June 26, 2008).

B. Transfer Pursuant to 28 U.S.C. § 1404(a)

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " York Grp., Inc. v. Pontone, Civ. No. 10-1078, 2014 WL 3735157, at *2 (W.D. Pa. July 28, 2014) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). A transfer, however, "is not to be liberally granted." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). A movant bears the burden of establishing the need for transfer, and " 'unless the balance of convenience of the parties is strongly in favor of [the movant], the plaintiff's choice of forum should prevail.' " Id. (quoting Owatonna Mfg. Co. v. Mel roe Co., 301 F.Supp. 1296, 1307 (D. Minn.1969)); see Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).

> A court considering a motion to transfer venue performs a two-part analysis. First, the court must decide whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, i.e., could the case have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450—451 (D.N.J.1999). Second, the court applies a number of public and private factors to determine which forum is most appropriate to consider the case. Id.

Centimark Corp. v. Jacobsen, Civ. No. 11–1137, 2011 WL 6000719, at *6 (W.D. Pa. Nov. 30, 2011). In Jumara the Court of Appeals for the Third Circuit stated:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15

5

>Wright, Miller & Cooper § 3847. While there is no definitive formula or list of the factors to consider, *see* 1A Pt. 2 Moore's ¶ 0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

Jumara, 55 F.3d at 879. The court of appeals in Jumara identified the following factors:

>[P]rivate interests[]: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
>[P]ublic interests[]: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Day v. 21st Century Centennial Insurance Company, Civ No. 12-1096-LPS, 2014 WL 3909533, at *2 (D. Del. Aug. 11, 2014) (citing Jumara, 55 F.3d at 879-80). A § 1404(a) transfer is based on convenience and the interests of justice. As such, the limitations on valid transfer are few.

"Section 1404(a) set no limit on the time when a motion to transfer must be made. Section 1044(a) motions have been held proper, on one end of the spectrum, even before service of process and, at the other, after the jury has failed to agree at trial – indeed, even after final judgment, when modification of the decree is at issue." 15 Wright & Miller § 3884; see Liberty Nat. Life Ins. Co. v. Suntrust Bank, Civ. No. 11-00820-SLB, 2012 WL 3849615, at *2-3 (N.D. Ala. Sept. 5, 2012) ("even assuming that [a defendant] remained unserved, [plaintiff] has not offered *any* authority to support the proposition that a case cannot be transferred prior to service on all defendants"); Travelers Indem. Co. v. E.F. Corp., Civ. No. 95-5660, 1997 WL 135819, at

*9 (E.D. Pa. Mar. 17, 1997) ("The time at which Movants brought this motion does not weigh against transfer…it has been held that such a motion is proper even after the jury has failed to agree at a trial of a case or even after final judgment when modification of a decree is necessary.").

III. DISCUSSION

   A. Summary of the Arguments Presented

        Plaintiffs state that although they "did not initially choose the Middle District, they now consent to a transfer to the Middle District." (ECF No. 156 at 3.) Plaintiffs argue that transfer is proper because "a substantial part of the events or omissions giving rise to the claim occurred" within the Middle District. See 28 U.S.C. § 1391. Although plaintiffs conclude that both the Western District and Middle District are proper venues for this action, plaintiffs now state that justice would be best served if this case was transferred to the Middle District. (ECF No. 156.)

        Moran defendants argue against the transfer of this case because they contend that the private and public factors do not favor a transfer of this case. (ECF No. 157.) Moran defendants contend that the Western District is the proper venue because plaintiffs chose to litigate in this district and all defendants prefer the Western District. (ECF No. 157 at 3.) Moran defendants contend that there are no practical considerations that could make the trial easier by moving it to the Middle District and that significant time and resources have already been invested in the Western District. (Id. at 5.)

        Powell defendants argue against moving this case to the Middle District because the court's concern over separate actions with claims to the same res has been obviated by the

decision in the Middle District case entered on October 21, 2014, denying the plaintiffs' request for a preliminary injunction. (ECF No. 158 at 2.) Powell defendants contend that no common issues of law exist between the claims asserted in the Western District and those asserted in the Middle District. (Id. at 2-3.) Powell defendants argue that the procedural postures of the cases are very different and to transfer this action to the Middle District would be inappropriate. (Id. at 3.)

   B. Change of Venue Pursuant to § 1404(a)

      1. Whether the Middle District has Jurisdiction over Plaintiffs' Claim.

A transfer of this case to the Middle District is appropriate. The claims filed by plaintiffs could have initially been filed in the Middle District. As indicated, and agreed to by all parties in their briefs, plaintiffs' claims arose from multiple locations throughout Pennsylvania and many of the parties are located within the Middle District or had significant contact with that jurisdiction. (ECF No. 156 at 4; ECF No. 157 at 4; ECF No. 158 at 12-13).

      2. *Jumara* Factors

         a. Private Factors

            i. Plaintiffs' and Defendants' Forum Preference

The first factor is plaintiffs' forum preference as manifested by the original choice. Although plaintiffs acknowledge that they "did not initially choose the Middle District [to file their claims], they now consent to a transfer to the Middle District." (ECF No. 156 at 3.) Initially, defendants argue that plaintiffs' decision to bring this suit in the Western District is determinative or creates an evidentiary burden that plaintiffs must overcome to transfer this case; however, the decisions cited by defendants are distinguishable. (ECF No. 157 at 2; ECF No. 158 at 10-12). The decisions do not reflect the procedural posture of this motion, e.g. the court's *sua*

*sponte* determination to consider transferring this case. (Id.) The court's decision to transfer this case is based on the interests of justice. If the factors discussed in Jumara indicate that the transfer is equitable, then the court can transfer the case regardless where plaintiffs chose to initiate the action. Day, 2014 WL 3909533, at *2-3.

The second factor is defendants' preference. Powell defendants argued that this court has become familiar with facts and claims of this case and that "significant time and resources litigating this action" have been spent within this district. (ECF No. 158 at 12.) Powell defendants argue that plaintiffs, based on their actions in this court, may attempt to disqualify attorney's representing Middle District plaintiffs to deprive the Powell defendants of their chosen counsel. (ECF No. 158 at 12.) Although this may cause an inconvenience to the Powell defendants if the counsel is disqualified, it is speculative at this time that the counsel would in fact be disqualified.

Taking the first two factors into consideration, the court finds that the factors weigh in favor of a transfer to the Middle District. Plaintiffs consent to a transfer of this case and defendants failed to persuade the court that a transfer will create an inconvenience. As indicated by both the Moran defendants and Powell defendants, many of the parties in this action are already litigating before the Middle District. The litigation in the Middle District concerns many of the same parties and issues that are involved in the instant action and the Middle District has dealt with the facts of this case since 2009. The Middle District is fully aware of the factual allegations that spawned both litigations and the argument that resources spent in the Western District will be wasted is conjecture. This case is still at the preliminary stages and the court cannot discern that resources spent here will be wasted.

ii. <u>Whether the Claim Arose Elsewhere</u>

The third factor is whether the claims arose elsewhere. As discussed above, this neither supports nor hinders the argument for transferring this case. The claims asserted by plaintiffs could have been filed in both districts.

iii. <u>Convenience of the Parties</u>

The fourth factor is the convenience of the parties as indicated by their relative physical and financial conditions.

> In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to [the Western District] (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."

<u>Mitel Networks Corp. v. Facebook, Inc.</u>, 943 F.Supp.2d 463, 471 (D. Del. 2013) (quoting <u>Smart Audio Technologies, LLC v. Apple, Inc.</u>, 910 F.Supp.2d 718, 730-31 (D. Del. 2012)). Moran defendants contend that it would be more convenient to stay in the Western District because all of the attorneys in this case are located in Pittsburgh and New York; however, this argument does not take into account that most of the attorneys representing parties in the instant action are representing parties in the action before the Middle District. The court finds this factor neither weighs for nor against a transfer. The parties in this action are dispersed throughout Pennsylvania and the cost of litigation has not been an issue in this case.

iv. <u>Convenience of the Witnesses</u>

The fifth factor is the convenience of the witnesses. Plaintiffs argue that twenty-eight witnesses, who will be available in the Middle District, are not subject to subpoenas from this district. (ECF No. 156 at 4.) Plaintiff contends that these witnesses are important because they have knowledge of "Defendants' theft and predicate acts, and the inner workings of [Powell

Law Group]." (Id.)  Plaintiffs argue that transferring this action to the Middle District will not significantly limit potential Western District witnesses from participating in an action in the Middle District. (Id. at 5.)

Powell defendants argue that this factor does not weigh in favor of transferring this action because "party witnesses are presumed to be willing to testify in either forum despite any inconvenience." (ECF No. 158 at 13) (citing Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999) ("The convenience of witnesses is examined only to the extent that witnesses may actually be unavailable for trial in one of the fora"). Federal Rule of Civil Procedure No. 45(e)(1) provides that "witnesses may be compelled to appear unless they reside more than one hundred miles from the court at which the trial is held."  Powell defendants contend that many non-party individuals who could become trial witnesses reside in the Western District and that "other non-party individuals, such as Patrick Owens," have been deposed preserving their testimony. (ECF No. 158 at 14.)  Powell defendants contend that plaintiffs have not verified that non-party witness would be unavailable at trial in this district. (Id.)

This factor neither supports nor precludes a transfer.  "Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis as each party is able, indeed, obligated to procure the attendance of its own employees for trial." Mitel Networks Corp. v. Facebook, Inc., 943 F.Supp.2d 463, 473 (D. Del. 2013) (citing Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 203 (D. Del. 1998)).  Concerning the non-party witnesses, the parties failed to sufficiently present argument capable of tipping the scale in either direction.

v. Location of Books and Records

This factor does not affect the court's decision to transfer the case because, as stated above, the parties in the instant action are located throughout Pennsylvania and " 'technological advances of recent years have significantly reduced the weight of [the location of the books and records] in the balance of convenience analysis.' " Berndt v. Deloitte & Touche LLP, Civ. No. 12-2157, 2012 WL 3029767, at *4 (E.D. Pa. July 25, 2012) (citing InfoMC, Inc. v. Comprehensive Behavioral Care, Inc., Civ. No. 10–4907, 2012 WL 1114360, at *17 (E.D. Pa. Mar.30, 2012)).  There is no reason to believe that the documents or other information involved in this case could not be produced in either district.

b. Public Factors

i. Enforceability of the Judgment

This factor does not weigh in favor of transferring the case.  Both districts would have the ability to enforce a district court's judgment.

ii. Practical Considerations

As the court discussed at the October 14, 2014 hearing, the court is inclined to transfer this case because it involves claims seeking money from defendants who are also defendants in the Middle District case and this case has many of the same issues and same parties as in the Middle District litigation.

> To permit a situation in which two cases involving precisely the
> same issues are simultaneously pending in different District Courts
> leads to the wastefulness of time, energy and money that § 1404(a)
> was designed to prevent.

Bank Express Int'l v. Kang, 265 F.Supp.2d 497, 508 (E.D. Pa. 2003) (citing Continental Grain Co. v. The FBL–585, 364 U.S. 19, 26 (1960)).  Powell defendants argued that the two cases are dissimilar making a transfer to the Middle District impractical. (ECF No. 158 at 6-8.)  Plaintiffs,

12

however, indicated at the October, 14, 2014 hearing, that they intend to bring cross-claims in the Middle District case against defendants asserting similar, if not the same, arguments that are currently before this court.  The cross-claims will lead to overlapping litigation.

Powell defendants argue that the denial of the plaintiffs' preliminary injunction motion in the Middle District attenuated the similarities of the cases. (ECF No. 165.)  Powell defendants stress that the Middle District action is based on alleged violations of the plaintiffs' civil rights and that the instant action is based on the alleged misappropriations of funds. (Id.)  This argument is correct; however, it fails to take into account plaintiffs planned cross-motion in the Middle District and the similar subject matter of the two cases.

Plaintiffs in this case and the plaintiffs in the Middle District case are seeking monetary recovery from Robert Powell, the Powell Law Group and their affiliates.  Although the preliminary injunction was denied in the Middle District, that decision did not preclude the plaintiffs in that case from continuing the action to seek recovery for harms they suffered.  The instant action was similar.  The preliminary injunction sought in both cases was not the end point of either litigation, but a procedure the plaintiffs sought to use to protect their interests.  Both litigations continue because both sets of plaintiffs are still seeking to recover losses and harms allegedly suffered as a result of the actions of Robert Powell, the Powell Law Group, and their affiliates.

Transferring the case to the Middle District will streamline the proceedings, minimize costs for the parties by avoiding duplication of discovery and motions, and minimize the need for judicial resources.  The Middle District is fully appraised of the subject matter of this case and has dealt with the subject matter of this case and similar issues for years.  The practical considerations weigh heavily in favor of transferring this case to the Middle District.

> iii. Court Congestion

Both courts have busy dockets.  The statistics show that the Middle District has a busier civil docket while the Western District has a busier criminal docket.  Based upon the statistics, this factor does not affect the court's decision to transfer the case.  See http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2013/tables/C00Mar13.pdf; http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2013/tables/D00CMar13.pdf

> iv. Local Interest in Deciding Controversy

The court cannot find any significant difference between the districts.  This factor does not affect the court's decision to transfer the case.

> v. Familiarity of Trial Judge with Applicable State Law

This factor is not an issue.

V. <u>CONCLUSION</u>

        Having considered the legal issues, the briefs submitted by the parties, and the practical considerations presented by transferring this case, the court concludes that, although the private interest factors are neutral in this instance, the practical considerations, within the public interest factors, strongly weigh in favor of transferring this case.  For the reasons stated above, the interests of justice will be better served by transferring this case to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a).  An appropriate order will follow.


Dated:  November 13, 2014                      <u>/s/ *Joy Flowers Conti*</u>
                                                          Joy Flowers Conti
                                                          Chief United States District Judge